# Exhibit A

EXECUTION COPY

# LITIGATION SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") the effective date of which is the date of execution of this Agreement by the latest-signing Party below ("Effective Date") between Azurity Pharmaceuticals, Inc. ("Azurity"), on behalf of itself and its Affiliates, on the one hand, and CoreRx, Inc. ("CoreRx"), on behalf of itself and its Affiliates, on the other hand, to resolve the parties' dispute relating to the Epaned® Patents (defined below).  Azurity and CoreRx are each a "Party" and collectively the "Parties".

WHEREAS, this Agreement is in relation to litigation in the United States District Court for the Middle District of Florida, *Azurity Pharmaceuticals, Inc. v. CoreRx, Inc.*, No. 8:21-cv-02515-TPB-SPF and a related action in the U.S. District Court for the District of Delaware (1:21-cv-01522) (collectively, the "Action");

WHEREAS, Azurity alleges that it is the owner of the Epaned® Patents (defined below) and holder of New Drug Application ("NDA") No. 208686 for an oral liquid pharmaceutical product containing enalapril maleate, 1 mg / mL;

WHEREAS, in the Action, Azurity asserted certain claims of the Epaned® Patents against CoreRx;

WHEREAS, Azurity has brought suits against Bionpharma (defined below) in the United States District Court for the District of Delaware, *Azurity Pharmaceuticals, Inc. v. Bionpharma Inc.*, C.A. Nos. 21-1286-LPS and 21-1455-LPS, *Silvergate Pharmaceuticals, Inc. v. Bionpharma, Inc.*, C.A. Nos. 18-1962-LPS, 19-1067-LPS, and 20-1256-LPS ("Bionpharma Actions") alleging infringement of the Epaned® Patents and other patents owned by Azurity;

WHEREAS, the Parties now wish to enter into this Settlement Agreement to resolve the Action; and

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the Parties intending to be legally bound do hereby agree as follows:

1.  Definitions.  The following terms will have the meanings provided below:

    1.1  "Affiliate" means a Person that controls, is controlled by, or is under common control with a party.  For the purposes of this definition, the word "control" (including, with correlative meaning, the terms "controlled by" or "under common control with") means the actual power, either directly or indirectly through one or more intermediaries, to direct the management and policies of such Person, whether by the ownership of more than fifty percent (50%) of the voting stock of such Person, or by contract, or otherwise.  For the avoidance of doubt, with respect to CoreRx, Affiliate does not include Bionpharma (defined below).

    1.2  "ANDA" means an Abbreviated New Drug Application, as defined in 21 U.S.C. § 355(j), *et seq.*, and the regulations promulgated thereunder.  For avoidance of doubt, an ANDA does not include any New Drug Application filed pursuant to 21 U.S.C. § 355(b)(2).

1.3     "Bionpharma" means Bionpharma, Inc. with headquarters at Suite2-4B 600 Alexander Road, Princeton, NJ 08540 and its Affiliates.

1.4     "Bionpharma ANDA" means any ANDA filed by Bionpharma in which the product that is the subject of Epaned® NDA is the Reference Listed Drug, including ANDA No. 212408, and any amendments or supplements thereto.

1.5     "Change of Control" shall mean the occurrence of any of the following events: (i) an acquisition of a company by another entity by means of any transaction or series of related transactions, (ii) a sale of all or substantially all of the assets of a company or (iii) an acquisition of a majority of the shares of, or controlling interest in, or effective right to control, a company.

1.6     "CoreRx Formulation" means the product manufactured by CoreRx that is the subject of Bionpharma's ANDA No. 212408 concerning enalapril maleate oral solution, 1 mg / mL, including amendments and/or supplements thereto.

1.7     "Epaned® NDA" means NDA No. 208686 and any amendments or supplements thereto.

1.8     "Epaned® Patents" means U.S. Patent Nos. 11,040,023 and 11,141,405.

1.9     "Final Court Decision" means (i) a final judgment of a U.S. District Court or a final decision on the merits of the United States Patent and Trademark Office Patent Trial and Appeal Board from which no appeal has been taken and the time for appeal has expired; (ii) the mandate of the United States Court of Appeal of the Federal Circuit with respect to an appeal of a final judgment from a U.S. District Court; or (iii) the mandate of the United States Court of Appeal of the Federal Circuit with respect to an appeal of a final decision on the merits of the United States Patent and Trademark Office Patent Trial and Appeal Board.

1.10    "Person" means any individual, firm, corporation, partnership, limited liability company, trust, joint venture, governmental authority, or other entity or organization.

1.11    "Third Party" means any Person other than Azurity, CoreRx and their respective Affiliates.  Bionpharma (defined below) is a Third Party.

2.  Releases, Dismissal of Action, Representations, Acknowledgements.

2.1     On the Effective Date of the Agreement or as soon as practicable thereafter, the Parties shall file a joint motion to dismiss without prejudice all claims and counterclaims pending against each other in the Action.  Each Party shall bear its own costs and attorneys' fees.  If for any reason the District Court raises an objection to the Parties' joint motion to dismiss the Actions, the Parties shall confer promptly and in good faith in order to take action consistent with this Settlement Agreement to secure entry of a dismissal of the Action.

2.2     In consideration of the mutual execution of this Agreement and upon the terms and subject to the conditions of this Agreement, and further subject expressly to the occurrence of the dismissal of the Action pursuant to Section 2.1 above, CoreRx, on behalf of itself, its Affiliates, and each of its respective agents, representatives, assigns, predecessors, and successors, hereby

fully, finally and irrevocably releases, relinquishes, acquits and discharges Azurity and its Affiliates, and each of its respective agents, representatives, assigns, predecessors and successors of and from any and all pending and potential claims, counterclaims, liabilities, defenses, demands, all manner of actions, and causes of action, reasonable attorneys' fees and other damages or costs of whatever nature, both at law and in equity, based on activities on or before the Effective Date which could have been, are, or were asserted in the Action. The foregoing in Section 2.2 shall not apply if Azurity brings a proceeding in court or any other forum in accordance with the last sentence of Section 2.5 should CoreRx resume manufacturing of CoreRx Formulation after the Effective Date.

2.3     In consideration of the mutual execution of this Agreement and upon the terms and subject to the conditions of this Agreement, Azurity, on behalf of itself, its Affiliates, and each of its respective officers, director, employees, agents, representatives, assigns, predecessors, and successors, hereby fully, finally and irrevocably releases, relinquishes, acquits and discharges CoreRx and its Affiliates, and each of its respective officers, director, employees, agents, representative, assigns, predecessors and successors from payment of damages for its acts of alleged infringement of the Epaned® Patents relating to the CoreRx Formulation prior to the Effective Date on the condition that, and for so long as, CoreRx and its Affiliates refrain from the activities prohibited by Section 2.4 below. To the extent that CoreRx or its Affiliates engage in any of the activities prohibited by Section 2.4 below, except in case of Failure to Fund, the release contained in this Section 2.3 shall no longer be effective. The foregoing in Section 2.3 does not and shall not apply to any customer of CoreRx and/or any Third Party and does not apply to Bionpharma and its Affiliates, and each of its respective agents, representative agents, representatives, assigns, predecessors and successors even if Bionpharma becomes an agent, representative, assign, or successor of CoreRx in the future. For the avoidance of doubt, nothing in this paragraph or anything in this Agreement releases, relinquishes, acquits, or discharges, or acts as a dismissal or settlement of any of Azurity's pending or potential claims counterclaims, liabilities, defenses, demands, all manner of actions, and causes of action, reasonable attorneys' fees and other damages or costs of whatever nature, both at law and in equity, against Bionpharma or in any of the Bionpharma Actions, and including specifically alleged damages for Bionpharma's alleged infringement of the Epaned® Patents and other alleged Azurity owned patents.

2.4     In consideration of the mutual execution of this Agreement and upon the terms and subject to the conditions of this Agreement, and further subject expressly to the occurrence of the dismissal of the Action pursuant to Section 2.1 above, as of the Effective Date, CoreRx (on behalf of itself and its Affiliates) agrees not to make, use, sell, import, and/or offer to sell and/or induce or contribute to others doing the foregoing within the United States the CoreRx Formulation prior to (i) the expiration of all relevant claims of the Epaned® Patents; (ii) a Final Court Decision holding all relevant claims of the Epaned® Patents invalid or unenforceable; or (iii) the date of a Final Court Decision affirming a decision of the United States Patent and Trademark Office Patent Trial and Appeal Board that all claims of the Epaned® Patents are unpatentable or otherwise cancels such claims.

2.5     Notwithstanding the foregoing, nothing in this Settlement Agreement shall prevent or impair the right of either Party to bring a proceeding in court or any other forum for breach of this Settlement Agreement (including, without limitation, any claim for infringement of any intellectual property based upon activities that are not the subject of the releases, waivers or

covenants not to sue granted hereunder) or any representation, warranty or covenant herein or to bring a proceeding in court or any other forum concerning any product that was not the subject of the Action or any activities after the Effective Date.  In addition, for the avoidance of doubt, nothing in this Settlement Agreement shall prevent or impair the right of Azurity to bring a proceeding in court or any other forum for infringement of the Epaned® Patents and for damages for CoreRx's infringement prior to the Effective Date of this Agreement if CoreRx resumes manufacturing the CoreRx Formulation after the Effective Date, except in the case of a Failure to Fund.

       2.6       Each Party (on behalf of itself and its Affiliates) represents, warrants and covenants to the other Party that it has not assigned or transferred, and will not assign or otherwise transfer, to any Person (other than an Affiliate) any matters released by such Party in this Section 2.

3.       <u>No License; No Covenant; No Authorization</u>.  The Parties agree that nothing in this agreement authorizes, licenses, or grants, either explicitly or implicit any rights to CoreRx, any of its Affiliates, Bionpharma, or any other Third Party either retroactively or prospectively to make, use, sell, import, and/or offer to sell and/or induce or contribute to others doing the foregoing within the United States the CoreRx Formulation at any time.  The Parties agree that nothing in this Agreement constitutes a license or a covenant not to sue from Azurity with respect to the Epaned® Patents.

4.       <u>No Payment to Azurity</u>.  The Parties acknowledge and agree that CoreRx has not paid and shall not pay any sum to Azurity pursuant to this Agreement.  To the extent any other aspect of this Agreement is construed to compensate or satisfy Azurity for its alleged infringement related to the CoreRx Formulation, this amount, however calculated, cannot account for the full alleged injury allegedly sustained by Azurity as a result of all alleged infringement activities related to the CoreRx Formulation, specifically Bionpharma's alleged infringement of the Epaned® Patents. Therefore, the Parties acknowledge and agree that if Azurity's Epaned® Patents have been infringed, Azurity has not received full compensation for the alleged infringement related to the CoreRx Formulation, and specifically has not received full compensation for Bionpharma's alleged infringement of the Epaned® Patents.

5.       <u>Confidentiality</u>. The contents of this Agreement, any and all communications between the Parties regarding the same, including any term sheets ("Epaned® Agreement Terms") shall be highly confidential and neither Party may disclose the Epaned® Agreement Terms to any other Person, other than those employees, officers, directors and advisors of each Party who need to know such information for the sole purpose of effecting the intent of the Agreement and who agree to keep such information highly confidential.  The Parties agree that failure to comply with the terms of this Section 5 shall be a material breach of this Agreement.

       5.1       No Party shall make any external announcement or other publicity relating to the Agreement.  The Parties shall not issue a press release related to the Agreement except that each Party may publicly disclose (i) that the Action has been resolved by mutual agreement, (ii) that there was no monetary payment made in connection with the Agreement and (iii) that the Agreement does not contain a patent license, and (iv) that the agreement does not contain a covenant not to sue.

5.2    No Party (nor any such Party's Affiliates) shall seek to rely upon and/or enter this Settlement Agreement or any acknowledgment set forth herein into evidence in any proceeding other than in a proceeding relating to a claimed breach of this Agreement.

5.3    Notwithstanding the foregoing, this Agreement may be disclosed as required by applicable laws and regulations to which a Party may be subject, including as required by any subpoena, court order, or other compulsory legal process. If a Party is subpoenaed or otherwise required by law to give testimony or provide information which in any way relates to this Agreement, such Party shall give the other Parties prompt notice of such requirement and, unless otherwise required by law, shall make no disclosure until the other Parties have had a reasonable opportunity to contest the right of the requesting person to such disclosure. The Parties shall provide each other with all reasonable cooperation and generally make their agents, employees, and contractors available to give testimony or to provide reasonable assistance in connection with any lawsuits, claims, proceedings and investigations relating to this Agreement.

6.    Indemnification.  Azurity agrees to indemnify and hold harmless each of CoreRx, its Affiliates and their respective officers, directors, shareholders, members, managers, employees, agents, and representatives (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the reasonable costs for counsel or others in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing these indemnity provisions, as and when incurred without the necessity of Indemnified Party being required to first pay it, caused by, relating to, based upon or arising out of (directly or indirectly) the breach of contract or other claim incurred by an Indemnified Party to the extent arising out of or related to this Agreement ("Related Bion Action").

6.1    The Indemnified Parties shall appoint a counsel of their choice to defend them in a Related Bion Action, reasonably satisfactory to Azurity, Azurity's consent to the choice of such counsel not to be unreasonably withheld (the "Defense Counsel"). Azurity agrees that it will not interfere with said counsel's independence of professional judgment or with the client-lawyer relationship. Prior to the Change in Control of Azurity, CoreRx and Azurity agree to cooperate in the conduct, defense, and/or settlement of a Related Bion Action. Such cooperation includes, but is not limited to, the provision of information, documents, and other materials reasonably necessary to Azurity and CoreRx's agreement that it shall not enter into a settlement of the Related Bion Action without the consent of Azurity (collectively, "CoreRx's Cooperation Obligations").

6.2    Contemporaneously with the execution of this Agreement or within 5 business days thereafter, Azurity shall wire $250,000 to the retainer account of CoreRx with Defense Counsel (the "Initial Retainer"). Initial Retainer shall be replenished by Azurity with subsequent payments of $250,000 up to a maximum of $1 million (the "Retainer"). The Effective Date of this Agreement shall be delayed until a wire for the Initial Retainer has been received by Defense Counsel. This Retainer shall be used solely for the purposes (or items) identified in Section 6. Failure to pay the Initial Retainer shall render this Agreement *void ab initio*. At the conclusion of all pending and threatened Related Bion Action including all appeals, Azurity shall be entitled to a refund of any unused portion of the Retainer. If CoreRx resumes manufacturing the CoreRx Formulation after the Effective Date in violation Section 2.4, it shall immediately return any and

all remaining amounts in the Retainer to Azurity.  Nothing in this section 6.2 shall limit the obligations of Azurity under any other section of this Agreement.

6.3   Upon a Change of Control of Azurity, CoreRx may, at its written election, terminate CoreRx's Cooperation Obligations. However, the Parties agree that any settlement in any Related Bion Action must be approved by Azurity Escrow Owner (described below), and for any amounts over what is available in the Escrow (described below) by the post-Change of Control Azurity entity, which will not be unreasonably denied.  The Parties agree to reasonably collaborate on any Related Bion Action and CoreRx agrees to keep Azurity and, if the Escrow is created, the Azurity Escrow Owner promptly informed of any developments in a Related Bion Action.  To the extent any aspect of a Related Bion Action has or has the potential to have an adverse impact on the Epaned® Patents or Bionpharma Actions, Azurity shall have the right to intervene in any Related Bion Action and CoreRx shall not object or restrict Azurity's right to intervene.

6.4   Azurity shall pay reasonable expenses incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of Related Bion Action, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Such reasonable expenses shall be paid promptly. CoreRx agrees to promptly provide invoices for expenses incurred in a Related Bion Action and provide reasonable documentation to substantiate the reasonableness of the expenses incurred as is customarily provided by law firms for such expenses. To the extent the Parties dispute the reasonableness of certain expense(s) in a Related Bion Action, Azurity shall have the right to such reasonable further information and clarification from the Defense Counsel for such expenses as is customary and reasonable. The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled.

6.5   Prior to any change in control of Azurity, Azurity shall deposit $20 million in an escrow account ("Escrow") controlled by CoreRx.  A post-Change of Control representative set up by Azurity to represent the interests of the current owners (the "Azurity Escrow Owner") shall be entitled to the balance remaining in such Escrow Account, if any, which are not needed to pay the indemnification obligations of Azurity as set forth in this Agreement at the conclusion of all pending and threatened Related Bion Action including all appeals.  Such escrow account shall be set up in form and substance satisfactory to CoreRx.  Azurity's failure to fund the Escrow as set forth herein (the "Failure to Fund") shall relieve CoreRx of all its obligations under this Agreement but shall not deprive it of the benefits of this Agreement. If CoreRx resumes manufacturing the CoreRx Formulation after the Effective Date in violation of Section 2.4, it shall immediately return any and all remaining amounts in the Escrow to Azurity Escrow Owner and there shall be no further funding of the Escrow.

6.6   In the event a dispute arises between the Parties regarding whether the obligations of this Section 6 are triggered and/or whether a Party has complied with its obligations under this Section 6 (or is in breach thereof), the prevailing party shall be entitled to be paid all its fees and expenses by the losing party, including all attorneys' fees, related to such dispute.

7.   Solvency Representation.  Azurity represents and warrants that: (a) it has sufficient cash on hand or other sources of immediately available funds, to pay all the indemnification obligations

6

set forth above (the "Indemnification Obligations") and (b) immediately after giving effect to the Indemnification Obligations contemplated by this Agreement, Azurity shall be solvent and shall (i) be able to pay its debts as they become due; (ii) own property that has a fair saleable value greater than the amount required to pay its debt; and (iii) have adequate capital to carry on its business.  No transfer of property is being made and no obligation is being incurred in connection with the Indemnification Obligations contemplated hereby with the intent to hinder, delay or defraud either present or future creditors of Azurity.  In connection with the Indemnification Obligation contemplated hereby, Azurity has not incurred, nor plans to incur, debts beyond its ability to pay as they become absolute and matured.

8. Each Party further represents and warrants that:

    8.1 It has corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder.  The execution and delivery by this Agreement and the performance by it of its obligations hereunder, has been duly authorized by all necessary corporate actions on its part.

    8.2 This Agreement has been duly executed and delivered by its and constitutes a valid and its binding obligation, enforceable against it in accordance with its terms.

    8.3 The execution and delivery by it of this Agreement, the performance by it of its obligations hereunder does not and will not contravene any provision of its organizational documents.

9. Governing Law.  The Agreement will be governed by and interpreted and enforced with, the laws in force in the State of Delaware, without regard to its conflict of laws provisions.

10. No Implied Consents.  Nothing in the Agreement will be deemed to be Azurity's consent to or approval of any ANDA or similar application or filing by either CoreRx or Bionpharma or any of their respective Affiliates, or to permit either CoreRx or Bionpharma or any of their respective Affiliates the right to reference or cross-reference any Epaned® NDA or similar application or filing.

11. Expenses and Defense.  Each Party will pay its own expenses incurred in connection with its negotiation of this Agreement.  Each Party agrees to use its respective reasonable best efforts to defend the Agreement in any government investigation or litigation brought by any person or entity other than the Parties.

12. Counterparts.  This Agreement may be executed in counterparts, each of it shall be an original, and which together shall form one and the same Agreement.

*[Signature Page Follows.]*

| Azurity Pharmaceuticals, Inc. | CoreRx, Inc. |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Dated: _____ | Dated: _____ |