# Holland & Knight

31 West 52nd Street | New York, NY 10019 | T 212.513.3200 | F 212.385.9010
Holland & Knight LLP | www.hklaw.com

Charles A. Weiss
+1 212-513-3551
Charles.Weiss@hklaw.com

February 2, 2022

*By ECF*

Hon. John G. Koeltl
U.S. District Court
500 Pearl St.
New York, NY 10007-1312

      Re:    <u>Bionpharma Inc. v. CoreRx, Inc., Civil Action No. 21-10656-JGK</u>

Dear Judge Koeltl:

We represent plaintiff Bionpharma Inc. ("Bionpharma") in the above-referenced case. Please accept this letter in response to the objections submitted by defendant CoreRx, Inc. ("CoreRx") to Bionpharma's proposed form of preliminary injunction.

## I.    <u>Product Pricing</u>

In its own proposed order, CoreRx seeks an increase to the Transfer Price of 30% per bottle, with the justification of generalized price increases for 2022. This should be rejected.

First, as Your Honor has recognized, the Agreement does not permit one party to unilaterally take a price increase. D.I. 50 at 21-22.

Second, Bion placed purchase order 4500001497 (D.I. 14-5) at the transfer price in effect at the time; that purchase order should have been filled in its entirety by December 2021. Applying CoreRx's purported 2022 pricing to the unfilled balance of that order would reward CoreRx for delaying delivery until it was compelled to perform by Court order.

Third, purchase order 4500001835 (D.I. 14-6) was placed in December 2021 pursuant to the same transfer price in effect at the time, and also recited the then-current 2021 transfer price.

Fourth, CoreRx provides no justification for the very large (30%) price increase it seeks. It does not and cannot allege that the raw material price has increased. CoreRx's statement that the increase is "consistent with the parties' agreed-upon price increases for the year 2022" is

Hon. John G. Koeltl
February 2, 2022
Page 2

incorrect and inapposite: the majority of price increases were far less, and varied product-to-product based on the unique circumstances of each. There was no across-the-board increase, much less an across-the-board *retroactive* price increase.

Furthermore, all other products supplied by CoreRx to Bionpharma are subject to a *different contract* not at issue in this case, with different pricing and price increase provisions including depending on whether a product is a profit-share or simple supply arrangement; enalapril solution is the only product subject to the Agreement in this case, and is simply not subject to any pricing determinations made under the other multiproduct agreement. The transfer price for the Product subject to this injunction should remain at the 2021 transfer price.

II.     **Time for delivery**

CoreRx seeks an unreasonable timeframe in which to manufacture the Product, and further seeks to use this Court's order as justification to delay other Bionpharma projects.

The product will not take so long to manufacture as CoreRx implies. CoreRx has the materials on hand, and has maintained the availability of materials, equipment, and facilities on hand required to manufacture the Product. D.I. 25. The actual manufacture of the quantity of product subject to the order takes no more than three calendar days, followed by several days for quality-control testing. The dates in Bionpharma's proposed form of order are themselves very forgiving of any scheduling issues that CoreRx may have.

As set forth in Bionpharma's moving papers, timely delivery of product is required to avoid a shortage that would impact Bionpharma's ability to fill its customers' orders. D.I. 14, ¶¶ 30-31. And already, CoreRx's sister company Azurity has been stating in public that Bionpharma will soon be out of product. For example, at oral argument of Azurty's motion for a preliminary injunction in a patent case it filed in Delaware against a different generic filer (Annora), Azurity's counsel represented in open court on January 28—*after* this Court had issued its Opinion and Order granting Bionpharma's motion for a preliminary injunction compelling CoreRx to supply Bionpharma with product—that Bionpharma would soon be unable to supply product. Exhibit 1 at 17:11-20, 19:21-20:23, 50:8-51:1. CoreRx should not delay its supply to Bionpharma while its sister company seeks to raise concern in the industry related to Bionpharma's ability to fill orders.[1]

In the unlikely event that manufacture of this product for Bionpharma disrupts CoreRx's production schedule for other Bionpharma products, that is a problem of CoreRx's own making. Further, the consequences (if any) of a delay in delivery of other products that CoreRx manufactures for Bionpharma are not an issue before the Court. Those products are

---

[1] As with Azurity's unsuccessful motion for a preliminary injunction against Bionpharma, the Delaware court denied Azurity's motion against Annora, finding that Azurity had (i) not shown a likelihood of success on the merits on tis infringement claim, and (ii) failed to demonstrate irreparable injury in the absence of an injunction. Ex. 1 at 56:24-73:22.

Hon. John G. Koeltl
February 2, 2022
Page 3

manufactured under a different contract between the parties, not the one at issue here for enalapril solution, and neither party has raised any claim of breach of that other contract.

### III.    Indemnity

CoreRx improperly seeks to have the Court impose on Bionpharma a sweeping indemnity that goes far beyond the scope of any indemnity that could possibly be required under the terms of the Agreement. The Court should not condition the relief afforded Bionpharma under the terms of the Agreement on the *de facto* revisions to it now sought by CoreRx.

First, Bionpharma's proposed order specifies in paragraph 4 that the preliminary injunction does not relieve any party of its obligations under the Agreement. Thus, any indemnity obligations Bionpharma would have absent the preliminary injunction will survive and remain unaffected.

Second, CoreRx's proposed indemnity would impose an unconditional obligation on Bionpharma that is far broader than what is provided for in the Agreement. The contractual indemnity is limited to third-party intellectual property rights and claims resulting from Bionpharma's sale of product. D.I. 14-1, § 13.1. CoreRx's proposed indemnity goes much further, even to the extent of requiring Bionpharma to assume responsibility for potential claims by Azurity against CoreRx for breach of their "settlement agreement" that itself precipitated the breach by CoreRx of the Agreement with Bionpharma. Again, if CoreRx opened itself up to a claim for breach of contract by its sister company Azurity, it should not look to Bionpharma for succor.

Third, what CoreRx refers to as Bionpharma's "offer" to provide an indemnity against Azurity's patent claims was an effort by Bionpharma to guarantee CoreRx's performance under the Agreement for the balance of its term, and avoid the very problems that resulted in the need for it to file the case at bar. D.I. 14 ¶ 11. CoreRx elected to not respond to Bionpharma's offer, and to precipitously "settle" with Azurity in breach of its obligations to Bionpharma under the Agreement.

Fourth, any obligation that Bionpharma might have to indemnify CoreRx against a hypothetical future infringement suit by Azurity remains an open question. For example, the Agreement provides for indemnification for "a claim by a Third Party that the [manufacturing of Product] for Bion hereunder infringes the intellectual property rights of such Third Party." D.I. 14-1 § 13.1. But it strongly appears that CoreRx and Azurity are "Affiliates" under the Agreement, which means that Azurity is not a "Third Party" and the indemnification would not be triggered. D.I. 40 at 7-8; *see also* D.I. 14-1 § 1.1 (Third Party is defined as "any person or entity other than a Party or its Affiliates").

Fifth, CoreRx never raised in its opposition papers that a preliminary injunction should be conditioned on Bionpharma's unconditional indemnification of CoreRx. Had it raised the issue when it should have, Bionpharma could have addressed it in reply.

Hon. John G. Koeltl
February 2, 2022
Page 4

      The Court should not adjudicate on an incomplete record the factually intensive hypothetical question of Bionpharma's potential indemnity obligations to CoreRx as to a possible future claim by Azurity.  To the extent an indemnity obligation existed prior to the preliminary injunction, it remains and CoreRx suffers no prejudice if the order is silent as to this issue.

      Thank you for your consideration of this matter.

      Respectfully yours,

      /s/ Charles A. Weiss

      Charles A. Weiss

Attachment
cc:  Peter S. Russ, Esq. (by e-mail and ECF)

#154729751_v4