**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BIONPHARMA INC.,

                    Plaintiff,

        v.                                          Civil Action No. 21-10656-JGK

CORERX, INC.,

                    Defendant.

**PLAINTIFF BIONPHARMA'S BRIEF IN OPPOSITION TO**
**THIRD PARTY AZURITY PHARMACEUTICALS, INC.'S MOTION TO INTERVENE**

Charles A. Weiss
Marisa Marinelli
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Tel: (212) 513-3200
Fax: (212) 385-9010

*Attorneys for Plaintiff,*
*Bionpharma Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................1

I.    AZURITY'S MOTION TO INTERVENE SHOULD BE DENIED .....................3

    A.    Azurity's failure to attach a pleading is fatal to its motion.........................3

    B.    Azurity has not shown entitlement to intervene as of right .......................6

        1.    Azurity's motion is untimely ............................................7

        2.    Azurity has no legally cognizable interest in the action ...............11

        3.    Azurity's alleged interests are protected by separate
litigation .....................................................................15

        4.    Azurity's alleged interests are adequately represented by its
sister company CoreRx, which is contractually obligated by
the collusive and anticompetitive settlement agreement to
cooperate with Azurity in defense of Bionpharma's claims.........16

    C.    Permissive intervention should be denied...................................18

II.   AZURITY'S REQUEST TO SUPPLEMENT THE RECORD SHOULD
BE DENIED...................................................................................19

CONCLUSION..................................................................................21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allstar Marketing Group, LLC v. AFACAI*,
  20-CV-8406 (JPC), 2021 WL 75138 (S.D.N.Y. Jan. 8, 2021) ...................................................5

*Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. State of New York*,
  No. 19-CV-11285 (KMK), 2020 WL 5658703 (S.D.N.Y. Sept. 23, 2020).............................7

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001)..................................................................................................16

*Eddystone Rail Co., LLC v. Jamex Transfer Servs.*,
  LLC, 289 F. Supp. 3d 582 (S.D.N.Y. 2018) ..........................................................................12

*Floyd v. City of N.Y.*,
  770 F.3d 1051 (2d Cir. 2014)...............................................................................................7, 9

*Griffin v. Sheeran*,
  767 F. App'x 129 (2d Cir. 2019) ...........................................................................................10

*H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*,
  797 F.2d 85 (2d Cir. 1986).....................................................................................................19

*High Farms, LLC v. King*,
  No. 16-CV-736 (NGG) (PK), 2021 WL 1137995 (E.D.N.Y. Mar. 25, 2021).................12, 13

*In re Holocaust Victim Assets Litig.*,
  225 F.3d 191 (2d Cir. 2000)...................................................................................................10

*Kamerman v. Steinberg*,
  681 F. Supp. 206 (S.D.N.Y. 1988) ...........................................................................................6

*Katz v. Berisford Int'l PLC*,
  No. 96 CIV. 8695 (JGK), 2000 WL 1760965 (S.D.N.Y. Nov. 30, 2000) ..............................12

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006)............................................................................................10, 12

*N.Y. News, Inc. v. Newspaper and Mail Deliverers' Union of N.Y.*,
  139 F.R.D. 291 (S.D.N.Y.1991) ...............................................................................................3

*Nat. Res. Def. Council, Inc. v. New York State Dep't of Env't Conservation*,
  834 F.2d 60 (2d Cir. 1987).....................................................................................................16

*Nat'l Ass'n for Advancement of Colored People v. New York*,
    413 U.S. 345 (1973)..............................................................................................18

*Penn-Star Ins. Co. v. McElhatton*,
    818 F. App'x 67 (2d Cir. 2020) ...........................................................................9

*R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
    467 F.3d 238 (2d Cir. 2006)...........................................................................6, 7

*Sequa Corp. v. Gelmin*,
    No. 91 CIV. 8675 (DAB), 1999 WL 33301666 (S.D.N.Y. Dec. 22, 1999) ..........................16

*St. John's Univ., New York v. Bolton*,
    450 F. App'x 81 (2d Cir. 2011) .........................................................................12

*In re Tribune Company Fraudulent Conveyance Litig.*,
    291 F.R.D. 38 (S.D.N.Y. 2013) ...........................................................................5

*Tummino v. Hamburg*,
    No. 12-CV-763 ERK VVP, 2013 WL 3005554 (E.D.N.Y. Apr. 5, 2013) .......................3, 4, 6

*U.S. v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994)...............................................................................18

*United States v. Yonkers Bd. of Educ.*,
    801 F.2d 593 (2d Cir. 1986)..............................................................................9

*United States v. Yonkers Bd. of Educ.*,
    902 F.2d 213 (2d Cir. 1990)...........................................................................9, 16

*Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990)......................................................................11, 12, 13

**Statutes**

15 U.S.C. § 15...............................................................................................1, 2

**Rules**

Fed. R. Civ. P. 24(b) .........................................................................................19

Fed. R. Civ. P. 24(c) ....................................................................................1, 3, 5, 6

L. Civ. R. 6.3.................................................................................................20

## INTRODUCTION

Plaintiff Bionpharma Inc. ("Bionpharma") respectfully submits this brief in opposition to the motion to intervene (D.I. 66, as revised by D.I. 87) by nonparty Azurity Pharmaceuticals, Inc. ("Azurity"). Even now, despite the Court's queries to Azurity during the telephone conference held on February 4, both the purpose and the result of Azurity's motion remain obscure.

Azurity initially stated that it sought to intervene to seek reconsideration of the Court's opinion and order granting Bionpharma's motion for a preliminary injunction. D.I. 66 (stating it "will move this Court … for …reconsideration of this Court's Order dated January 27, 2022, granting Bionpharma's motion for a preliminary injunction (ECF No. 50) and, upon reconsideration, vacating the Order and denying the motion"). It now states that it wishes to intervene to solely to supplement the record and appeal from the preliminary injunction. D.I. 87. But unless Azurity contends (and concedes) that it is bound by the preliminary injunction, it presents no legally cognizable basis on which to appeal from that order or supplement the record thereon.

Azurity's failure to attach a pleading to its motion, despite the clear dictates of Fed. R. Civ. P. 24(c), also leaves unexplained its status and role in this case if the motion is granted. This studied ambiguity is seemingly by design: Azurity seeks to intervene in a "limited capacity" that would be defined narrowly or expansively in a manner determined by Azurity itself. For example, if Azurity's motion is granted, would it by bound by the preliminary injunction against CoreRx? Would it be subject to claims against it by Bionpharma, would it be insulated from claims because it and Bionpharma are non-diverse (both are Delaware corporations), or would it be subject to claims so long as they arose under federal law, *e.g.*, 15 U.S.C. § 15? Would it participate in discovery, would it be entitled to obtain confidential

1

commercial information from Bionpharma, and would it double-team Bionpharma by filing separate briefs and pursuing separate arguments on motions?  These complexities were not presented in the cases cited by Azurity for the proposition that a prospective intervenor need not *always* attach a pleading to its motion.  As set forth below, those cases are readily distinguishable, and the need for a proposed pleading to support *this motion* is patently obvious.

Nor does Azurity demonstrate that it has a *legally* cognizable interest in this case that would be prejudiced by denial of its motion.  To be sure, Azurity has a *business* interest in the outcome of this case, as do many others, *e.g.*, the New York Medicare system and private insurers (which will pay greater or lesser amounts for their covered persons' prescriptions); patients and their families (who will pay greater or lesser co-pays or cash price); and the trucking company that transports Product purchased by Bionpharma from CoreRx's manufacturing plant to Bionpharma's warehouse (which will have less work if there are no shipments).  But the existence of a *business interest* does not provide grounds for intervention.  By contrast, Azurity's sole *legal* interest is already being adjudicated (unsuccessfully, from Azurity's perspective) in its patent infringement cases against Bionpharma in Delaware.  Because Azurity has every remedy the law provides available to it in the Delaware cases, and the merits of its patent claims will be adjudicated there, it cannot plausibly allege that it would be deprived of a remedy by denial of its motion to intervene.

Finally, Azurity's motion is profoundly untimely.  As it clear from the Settlement Agreement between it and CoreRx (D.I. 54-1), Azurity (i) essentially *contracted for* this case by inducing CoreRx to breach its supply agreement with Bionpharma; (ii) anticipated that it would occur even before Bionpharma even knew that CoreRx would breach (Section 6, defining "Related Bion Action"); (iii) secured an obligation for CoreRx to cooperate with Azurity in

defense (Section 6.1); (iv) approved (or consented to) CoreRx's choice of defense counsel (*id.*); and (v) established a litigation war chest to fund CoreRx's defense (Section 6.2).  Nevertheless, it waited until Bionpharma's motion for a preliminary injunction was granted before moving to intervene, perhaps because it did not want to expose itself unless it deemed necessary.  In other contexts, a period of 51 days (the time between Bionpharma's filing of its preliminary injunction motion and Azurity's filing of its motion to intervene) would bespeak alacrity, but on the facts at bar it betrays dilatoriness.

Azurity's purported justification for its delay is unsatisfactory.  In essence, it throws stones at its sister company's defense counsel for not arguing in opposition to Bionpharma's motion in the manner it claims to have desired.  D.I. 67 at 11.  It is not Bionpharma's place to referee an intramural dispute between its adversaries' counsel, but notes that Azurity's criticism comes with ill grace and is itself untimely.  There is no reason why Azurity could not have availed itself of its contractual right to participate in CoreRx's preparation of its opposition papers, and if Azurity was dissatisfied with them it should have sought intervention immediately after they were filed on December 29, 2021, instead of waiting to see how oral argument went on January 25 before even *starting* to prepare its motion.  D.I. 69 ¶ 12 ("Following the Court's January 25, 2022 Hearing, Azurity immediately and diligently began preparing to file a motion to intervene in the above captioned action.").

For these reasons and those set forth in more detail below, Azurity's motion should be denied.

## I.     AZURITY'S MOTION TO INTERVENE SHOULD BE DENIED

### A.     Azurity's failure to attach a pleading is fatal to its motion

In order to evaluate the propriety of motions to intervene, Rule 24(c) requires that such motions "must state the grounds for intervention and be accompanied by a pleading that sets out

the claim or defense for which intervention is sought."  Generally speaking, motions to intervene

for a limited purpose are prohibited absent purely collateral matters such as when a nonparty

seeks access to a sealed document.  *Tummino v. Hamburg*, No. 12-CV-763 ERK VVP, 2013 WL

3005554, at *2 (E.D.N.Y. Apr. 5, 2013) (denying motion to intervene for limited purpose); *N.Y.*

*News, Inc. v. Newspaper and Mail Deliverers' Union of N.Y.*, 139 F.R.D. 291, 293

(S.D.N.Y.1991) ("it is clear that the Federal Rules do not anticipate limited, 'special status'

intervenors").

Judge Korman's opinion denying a motion to intervene in *Tummino* is illustrative.  In that

case, the plaintiff sought reversal of the FDA's denial of its Citizen Petition that sought to make

the oral contraceptive "Plan B" available over-the-counter for women of all ages, and prevailed

on the merits.  Plan B's proprietor, the pharmaceutical company Teva, sought to intervene to

argue in favor of preserving its purported right to three years of marketing exclusivity under the

Hatch-Waxman Act, styling its motion to intervene "in support of neither party and for the

limited purpose of defending its statutory right to marketing exclusivity."  The Court denied

Teva's motion to intervene, explaining that intervention "for limited purposes in support of

neither party is fundamentally illogical because the purpose of intervention under Rule 24 is for

the intervenor to come in as a party in its own right, not to support one side or another.  *Id.* at *2.

The court connected this to Rule 24(c)'s requirement that a proposed intervenor attach its own

pleading, such that its status in the case as a full participant is clear, and held that Teva's failure

to attach a pleading was fatal to its motion.  *Id.*[1]

---

[1] The court granted Teva's alternative argument and treated its submission as an *amicus* brief.

*Tummino*, 2013 WL 3005554, at *2.  That would not be appropriate here, because Azurity seeks

Here, as best as can be determined, Azurity's desire to appeal the preliminary injunction would seem to require Azurity to intervene as a defendant that is bound by the injunction, which would require it to participate as a defendant for all purposes and annex a proposed Answer to its motion.  Bionpharma anticipates that Azurity will respond as it did in its letter response (D.I. 78).  In that response, Azurity cites two cases for the proposition that a party may intervene in a case for a limited purpose, or that attachment of a pleading is not required where a party merely submits affidavits and briefs which set forth facts and allegations to give notice of its claims.  Azurity's cases are inapposite.

In *Allstar Marketing Group, LLC v. AFACAI*, 20-CV-8406 (JPC), 2021 WL 75138 (S.D.N.Y. Jan. 8, 2021), the plaintiff obtained temporary restraints against the defendants, which were selling counterfeit goods on the intervenor's (Wish's) internet-based platform.  Although Wish was not a defendant and had no notice of the proceedings, the injunction by its terms imposed obligations directly on Wish, such as to provide discovery, shut down defendants' storefronts, and freeze their accounts.  *Id.* at *1.  Wish moved to intervene with respect to the mandate that it shut down the storefronts and freeze accounts.  *Id.*  The court granted Wish's motion, finding that Wish was not seeking additional relief beyond the requirements directly imposed on it by the court, only protecting its own directly implicated rights.  *Id.* at *3.  Moreover, the defendants (alleged counterfeiters) had not appeared in the case, and presumably

---

to present the same legal arguments that CoreRx would presumably make in its own appeal.  By contrast, Teva had a different perspective than the *Tummino* defendant (Commissioner of the FDA), who as a public official was charged with defending the agency's action on the Citizen Petition.

would never appear to defend.  By contrast, Azurity indisputably *had* notice of these

proceedings, and the preliminary injunction does not on its face impose any direct obligations on

Azurity.

In *In re Tribune Company Fraudulent Conveyance Litig.*, 291 F.R.D. 38 (S.D.N.Y.

2013), the main contested issue was the timeliness of the motion to intervene; the parties did not

dispute that the movant had an interest in the property at the center of the action.  And while it

did not annex a proposed pleading to its motion, the intervenor stated that it would directly adopt

the then-pending Complaint.  *Id.* at 41.  In that case, denying the motion because the movant had

not completed the ministerial task of cutting and pasting the existing Complaint to add itself as a

plaintiff, and annexing the resulting document to its motion, would have exalted form over

substance.  Accordingly, the court noted that its decision to excuse the movant's technical

noncompliance with Rule 24(c) was premised on the "unique shape" of the case, and that the

movant tied its position to the existing Complaint.  *Id.* at 42 n.3.

Neither *Allstar* nor *Tribune* stand for the proposition that a nonparty like Azurity may

intervene in some sort of sideline, stone-throwing capacity, or avoid the requirements of Rule

24(c), because it submitted minimal briefing associated with the relief it seeks.

Azurity's motion should be denied on this basis alone.  *Tummino*, 2013 WL 3005554, at

\*2; *Kamerman v. Steinberg*, 681 F. Supp. 206, 211 (S.D.N.Y. 1988).

### B.   Azurity has not shown entitlement to intervene as of right

To intervene as of right, "an applicant must (1) timely file an application, (2) show an

interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the

action, and (4) show that the interest is not protected adequately by the parties to the action."  *R

Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006).  The

"[f]ailure to satisfy any one of these [four] requirements is a sufficient ground to deny the

application." *Id.* at 241 (quoting *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003)).  Here, every single factor governing intervention weighs heavily against Azurity.

        1.       *Azurity's motion is untimely*

In assessing timeliness, courts consider "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Floyd v. City of N.Y.*, 770 F.3d 1051, 1058 (2d Cir. 2014).  All of these factors weigh against Azurity.

Azurity knew or should have known of this case as of the day it was filed, and Bionpharma's motion for preliminary injunction, to which Azurity claims to have an interest, was filed that same day; indeed, its settlement agreement with CoreRx expressly contemplates a lawsuit by Bionpharma (D.I. 54-1 § 6, defining "Related Bion Action") and requires CoreRx to cooperate with Azurity "in the conduct, defense, and/or settlement of a Related Bion Action." *Id.* § 6.1.  The length of time that Azurity has known or should have known of this action is long, especially in the context of seeking relief specifically to an injunction that has already been decided, and weighs against a finding of timeliness.  Azurity cites an "ordinary five-month range" (D.I. 67 at 10), but the case it cites for this proposition further counsels that such a time period is timely if it is "prior to any significant substantive motions," which is certainly not the case here.  *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. State of New York*, No. 19-CV-11285 (KMK), 2020 WL 5658703, at *7 (S.D.N.Y. Sept. 23, 2020).  Azurity's argument that the motion is timely because it is within the timeframe for a motion for reconsideration is undercut by its own withdrawal of that proposed motion; it now seeks to supplement a closed record of a motion that has already been decided (D.I. 87), and it has not even attempted to put forward on what basis it wishes to participate in an appeal.

Azurity's argument that it only became aware that its interests were not being adequately represented after the January 25, 2022 preliminary injunction hearing, based on three specific issues that were raised at that hearing, misrepresents the record; each of the issues raised by Azurity as not being adequately addressed (allegedly) were all addressed in detail during the hearing.

| Azurity's Alleged "Issue" | The Record |
| --- | --- |
| the substance of the Settlement Agreement between Azurity and CoreRx | CoreRx's CEO discussed substance of the CoreRx-Azurity settlement agreement (D.I. 33 ¶ 16), as did CoreRx's counsel (D.I. 56, Hr'g Tr. 12:22-25, 25:22-25, 26:1-7, 26:22-27:20, 28:15-29:19); CoreRx's counsel offered to put the settlement agreement into evidence and the Court rejected its offer (D.I. 56, Hr'g Tr. 26:1-8). |
| Azurity's intent and ability to pursue litigation in the event that CoreRx resumed supplying product to Bionpharma | CoreRx repeatedly brought up its certainty that Azurity would sue it for infringement and seek enhanced damages.  (D.I. 33 ¶ 18; D.I 56, Hr'g Tr. 12:12-14 ("we know with certainty that Corerx will be sued about by Azurity for willful infringement by Bion"), 12:22-25, 13:16-19, 14:21-24, 18:12-13). |
| the scope of CoreRx's exposure through such litigation | CoreRx discussed its alleged exposure many times (D.I. 33 ¶¶ 34-36; D.I. 35 at 20, 20 n.3, |

| | 22; D.I. 56, Hr'g Tr. 18:17-24, 25:22-25), including putting in an expert declaration purportedly calculating this exposure (D.I. 36). |
|---|---|

Additionally, even if these specific items were omitted, that is no more than Azurity's second-guessing CoreRx's litigation strategy, not an indication that Azurity's interests were not adequately represented. *United States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 218 (2d Cir. 1990) ("If disagreement with an actual party over trial strategy . . . were sufficient basis for a proposed intervenor to claim that its interests were not adequately represented, the requirement would be rendered meaningless."). Azurity's argument that it could not have been aware of whether its interests were represented is undercut by both fact and law.

Ultimately, Azurity had knowledge of this case and of its own purported interest in it, but delayed seeking intervention until after the issuance of an order it did not like. *See Floyd*, 770 F.3d at 1059-60 (2d Cir. 2014) (finding untimely a motion to intervene only following the entry of an order the proposed intervenor took issue with). This cuts strongly against a finding of timeliness.

Bionpharma will be prejudiced by the grant of Azurity's untimely motion. Azurity seeks post-judgment intervention, which is generally disfavored because it creates delay and prejudice to existing parties. *Id.*; *see also United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986); *Penn-Star Ins. Co. v. McElhatton*, 818 F. App'x 67, 70 (2d Cir. 2020).

Intervention prior to decision, but following the close of briefing on an injunction motion, can likewise be untimely. For example, in *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377 (2d Cir. 2006), MasterCard had contracted with FIFA (the body governing

international soccer) as the exclusive sponsor of FIFA events.  *Id.* at 380.  FIFA meanwhile

signed a second agreement with Visa for the same sponsorship rights.  *Id.*  MasterCard sued

FIFA and moved for a preliminary injunction; the day before the preliminary injunction hearing,

Visa sought to intervene, claiming it sought to defend its own contractual rights with FIFA.  *Id.*

at 381.  The district court denied Visa's motion as untimely, and the Second Circuit affirmed.  As

with Azurity here, Visa (i) knew of the parties' position from inception of the case (and even

before); and (ii) did not seek intervention until the eve of the preliminary injunction hearing.  *Id.*

at 390.  Azurity's delay here is worse, having waited until after the injunction motion was

granted.

Further, Azurity can and is asserting its patent rights directly against Bionpharma in

Delaware.  Denial of its motion to intervene in this case would not prejudice Azurity, which

"remain[ed] free to"—and did in fact previously—"file a separate action." *Griffin v. Sheeran*,

767 F. App'x 129, 134 (2d Cir. 2019); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199

(2d Cir. 2000) ("Because appellants remain free to file a separate action, they have not

established that they will be prejudiced if their motion to intervene is denied.").  *MasterCard*

again is instructive.  In *MasterCard*, the court held that Visa's interests were not implicated in

the suit between MasterCard and FIFA and it would suffer no prejudice because "FIFA likely

has breached the warranty provision of that contract, and Visa has the right to sue FIFA for that

breach." *MasterCard*, 471 F.3d at 386.  Here, Azurity's alleged interest in this case is to

allegedly protect its patent rights, D.I. 67 at 1, which it is ostensibly doing by way of the

numerous lawsuits brought against both parties to this case in other courts.  *Silvergate Pharm.,*

*Inc. v. Bionpharma Inc.*, No. 1:18-cv-0-1962-LPS (D. Del.); *Silvergate Pharm. Inc. v.*

*Bionpharma Inc.*, No. 1:19-cv-01067-LPS (D. Del.); *Azurity Pharm., Inc. v. Bionpharma Inc.*,

No. 1:21-cv-01286-LPS (D. Del.); *Azurity Pharm., Inc. v. Bionpharma Inc.*, No. 1:21-cv-01455-LPS (D. Del.). Azurity would not be prejudiced because its expressed interest in this case (exclusivity for branded Epaned) is being litigated, and can be vindicated if meritorious, in the patent cases in Delaware.

Fourth, there are no special circumstances here that warrant a finding of timeliness. As explained above, Azurity has known or should have known of this action from the day it was filed, but delayed moving to intervene until after the Court issued an order that Azurity did not like. Far from being special circumstances weighing in favor of timeliness, this is instead strategic delay, to cause disruption and interfere with execution of the injunction.

The motion to intervene is untimely, and on that ground alone, should be denied.

2.      *Azurity has no legally cognizable interest in the action*

Azurity puts forward two alleged interests in this action: (1) preventing further patent infringement, and avoiding what would be irreparable harm in the event of such infringement; and (2) an indemnity obligation to CoreRx for liability to Bionpharma in this action. Neither of these are legally cognizable interests in this particular case sufficient to warrant intervention.

Regarding "preventing further patent infringement and avoiding what would be irreparable harm," first, this interest is remote and contingent on the occurrence of a separate sequence of events, *i.e.*, Azurity prevailing in its separate patent infringement litigation against Bionpharma. *Washington Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) ("An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."). In *Washington Electric*, the Second Circuit specifically held that where a proposed intervenor's interest was based upon the outcome of separate and independent litigation, the interest was not direct or substantial. *Id.*; *see also St. John's Univ., New York v.*

*Bolton*, 450 F. App'x 81, 83 (2d Cir. 2011) (denying motion to intervene because "interest is contingent both on St. John's prevailing in the underlying action and on his prevailing in a separate action to enforce the agreement, which St. John's disavows").  As the Second Circuit explained in *MasterCard*, Visa's interests in a contract dispute between MasterCard and FIFA were not implicated because "FIFA likely has breached the warranty provision of [its contract with Visa], and Visa has the right to sue FIFA for that breach."  *MasterCard*, 471 F.3d at 386.  Azurity's interest lies in the separately pending patent cases in Delaware, not here.

*High Farms, LLC v. King*, No. 16-CV-736 (NGG) (PK), 2021 WL 1137995 (E.D.N.Y. Mar. 25, 2021), is also on point.  In *High Farms*, the proposed invervenor's purported interests were "contingent on rulings from other courts," for example, the outcome of concurrent litigation to determine whether she was actually a member of the plaintiff company.  *Id.* at *13; *see also Eddystone Rail Co., LLC v. Jamex Transfer Servs.*, LLC, 289 F. Supp. 3d 582, 593 (S.D.N.Y. 2018) ("That the Proposed Intervenors' interest turns on another court's prospective ruling underscores the contingent nature of the Proposed Intervenors' interest. Thus, because their claim is dependent upon a court ruling on an ancillary legal issue, it is too attenuated to warrant intervention."); *Katz v. Berisford Int'l PLC*, No. 96 CIV. 8695 (JGK), 2000 WL 1760965, at *5 (S.D.N.Y. Nov. 30, 2000) ("The possibility that a party will establish an interest in a judgment through a pending lawsuit in another court is a contingent interest.").

Third, the "property or transaction which is the subject of the action" here is a manufacturing and supply contract between Bionpharma and CoreRx.  In order to have an interest in the "property or transaction which is the subject of the action," the intervenor must have an interest in "the pleadings in a case as [it] find[s] them." *Wash. Elec. Coop.*, 922 F.2d 94, 97 (citations omitted).  An intervenor cannot use Rule 24 to "creat[e]" a "whole new suit[ ]" or to

"inject collateral issues into an existing action." *Id.*  In *High Farms*, intervention was denied because the proposed intervenor sought to inject collateral issues into the lawsuit that "do not pertain to the central issues of whether the parties entered into a loan agreement and whether the loan was repaid," and therefore were not "the property or transaction which is the subject matter of the action." *Id.* at *13.  Here, it is impossible to determine the extent to which intervention by Azurity would change the case because of its failure to comply with Rule 24(c).

Fourth, Azurity's assertion that it is seeking to prevent irreparable harm is belied by two facts that it fails to bring up.  Specifically, Azurity has already attempted, and failed, to prevent the sale of Bionpharma's product through its patents by seeking an injunction in the court adjudicating alleged infringement of those patents.  Azurity's effectively asks this Court to overrule the decision of the Delaware court, which actually examined the claims of the patents at issue and the Product, and found that Azurity could not demonstrate a likelihood of success on the merits and refused to enjoin Bionpharma from sale of its Product manufactured by CoreRx.

Indeed, the Delaware court found that Azurity will *not* be irreparably harmed by the presence of Bionpharma (or other generic competitors) on the market.  In denying Azurity's motion for a preliminary injunction against second generic filer Annora, Judge Stark stated:

> One of the general themes, and you've already addressed it, but I want to make sure I fully understand you. One of the general themes of the defendant here seems to be you all told me there would be horrible repercussions for your client if I did not grant a preliminary injunction to stop the launch of Bionpharma. I did not grant such a preliminary injunction and your client has survived and, arguably, even thrived nonetheless. I understand some of the particular circumstances that happened with Bionpharma and presumably those precise circumstances would not occur again, but why shouldn't I conclude as a general matter your client will find a way to survive and this is just, you know, crying wolf a second time?

> *   *   *

One reason for Azurity's failure is the evidence with respect to what occurred in connection with Bionpharma's launch of it generic version of Epaned. The record appears to show that Azurity was not irreparably harmed by that launch and has fully recovered from it. That is despite me, as the presiding judge in the Bionpharma case, having heard that essentially all the harms forecast now in this case, with respect to the pending motion here, would occur and would be irreparable were I to deny the preliminary injunction to stop Bionpharma's launch. I then denied that motion, Bionpharma launched and here we are months later, and I do not believe that Azurity has been irreparably harmed. … I have real world experience with Azurity, real world experience with Azurity that it can survive the launch of a generic, even when it told me that it would be irreparably harmed.

Exhibit 1, Tr. 26:20-27:7; *id.* at 68:23-73:22.[2]   Azurity's re-arguing of issues it has already lost, and re-framing them as undecided instead of adverse decisions already being in place, is disingenuous and lacking candor.  For all these reasons, Azurity's alleged interests in this action are remote and speculative, and not legally cognizable here.

Regarding Azurity's alleged indemnity to CoreRx, first, there is significant doubt regarding the enforceability of the CoreRx-Azurity settlement agreement.  D.I. 50 at 21.  Even if that agreement were valid, this alleged interest is entirely undercut by Azurity's own position that it seeks to intervene only to supplement the injunction record and participate in an appeal of the injunction.  The injunction has absolutely nothing to do with CoreRx's damages liability to Bionpharma, which is the only thing relevant to this indemnity, therefore Azurity's proposed

---

[2] Exhibit to the Declaration of Charles A. Weiss in Opposition to Third Party Azurity Pharmaceuticals, Inc.'s Motion to Intervene, filed concurrently herewith.

limited intervention bears no rational relationship to this alleged interest.  The Court should entirely disregard this purported interest.[3]

Azurity fails to demonstrate its interest in this particular case, except to hope that this Court overrules adverse decisions against Azurity issued by another court.  This factor weighs heavily against intervention.

> 3.    *Azurity's alleged interests are protected by separate litigation*

For the reasons discussed above, Azurity has no legitimate interest in this case, and therefore, it is in no need of protection.  Azurity's alleged interests are being protected by way of its own litigation in the District of Delaware.  Again, Azurity's only interest here is to re-litigate and to acquire by coercion what it failed to achieve in Delaware: an order keeping Bionpharma off the market.

Regarding its alleged irreparable harm, Azurity raises here the exact same alleged harms already rejected by the Delaware court.  *Compare* D.I. 66 at 15-16, *with* Annora P.I. Tr. 72:19-73:1 ("The speculated loss of R&D opportunities, reduced sales of other products, layoffs and the other harms I listed before, in the context of this case I think Azurity can be compensated for these harms with a money judgment, probably a large money judgment. And, again, these are the

---

[3] Indeed, a reversal of the preliminary injunction would *increase* CoreRx's liability to Bionpharma, because its supply of product as required under the Supply Agreement and compelled by the injunction reduces CoreRx's potential money damages for breach of contract. Remarkably, in its role as CoreRx's indemnitor under the Azurity/CoreRx settlement agreement, the relief sought by Azurity would *expose* it to liability by increasing CoreRx's own damages exposure.  This is exactly backwards of the position normally taken by an indemnitor, which seeks to *reduce* its indemnitee's exposure to a large money judgment.

same types of harms that were predicted to be both unavoidable and irreparable were

Bionpharma to launch, but that turned out not to be a correct prediction.").  This argument was

rejected once, and should be rejected again.

> 4.   *Azurity's alleged interests are adequately represented by its sister
> company CoreRx, which is contractually obligated by the collusive and
> anticompetitive settlement agreement to cooperate with Azurity in defense
> of Bionpharma's claims*

Again, Azurity lacks any genuine, legally recognized interest in this case.  However, its

allegations that its interests are not adequately represented by CoreRx are entirely contradicted

by the record.

What Azurity is primarily stating is that it does not approve of how CoreRx opposed

Bionpharma's motion; this is not "inadequately represented" under the law.  When an intervenor

and existing party share an objective, the intervenor must show, among other things, "collusion,

adversity of interest, nonfeasance, or incompetence" to rebut the presumption of adequate

representation.  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179-80 (2d Cir. 2001);

*see also Sequa Corp. v. Gelmin*, No. 91 CIV. 8675 (DAB), 1999 WL 33301666, at *2 (S.D.N.Y.

Dec. 22, 1999) ("Where the proposed intervenor seeks the same outcome as a party, adequate

representation is presumed.").  CoreRx and Azurity undisputedly share an objective:  reversing

the injunction granted in favor of Bionpharma.  Azurity does not even attempt to argue that

Bionpharma and CoreRx are in collusion, that itself and CoreRx have an adversity of interest, or

nonfeasance or incompetence on the part of CoreRx.  Instead, its argument is grounded in its

disagreement with how CoreRx presented its defenses to Bionpharma's motion for a preliminary

injunction, and is now second-guessing defense counsel's approach.  This is not inadequate

representation.  *Nat. Res. Def. Council, Inc. v. New York State Dep't of Env't Conservation*, 834

F.2d 60, 62 (2d Cir. 1987) ("So long as the party has demonstrated sufficient motivation to

litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented."); *Yonkers Bd. of Educ.*, 902 F.2d at 218 (2d Cir. 1990) ("If disagreement with an actual party over trial strategy . . . were sufficient basis for a proposed intervenor to claim that its interests were not adequately represented, the requirement would be rendered meaningless.").

Further, under the terms of the CoreRx-Azurity settlement agreement, those parties have agreed "to cooperate in the conduct, defense, and/or settlement of a Related Bion Action."  D.I. 54-1 § 6.1.  To the extent that Azurity alleges that its interests were not adequately represented to date, the fault for that lies squarely with Azurity, as it has always had a voice in the conduct and defense of this case.  Azurity should not be heard to argue that its interests are not protected by CoreRx when CoreRx is required to cooperate with Azurity in the conduct and defense of this case.

As noted above, Azurity alleges three specific instances of CoreRx failing to represent Azurity's interests: failure to put the substance of the CoreRx-Azurity settlement agreement before the Court, adequately expressing Azurity's willingness to sue CoreRx in the event of breach of that agreement, and explaining CoreRx's purported exposure to Azurity for breach and patent infringement.

For the reasons detailed above, each of these issues was not only briefed, but extensively argued by CoreRx.  Further scrutinizing Azurity's specific claims here, first that "[n]either party was able to accurately represent whether Azurity intended to sue in the event that the Court ordered CoreRx to make further supply available" is flatly contradicted by the record.  D.I. 56, Hr'g Tr. 12:13-14 ("we know with certainty that Corerx will be sued about by Azurity for willful infringement by Bion").  The fact that the Court expressed skepticism over this does not mean

17

that it was not argued, repeatedly, by CoreRx.  Azurity's second claim, that "the Court was not

presented with a full appraisal of the possible damages CoreRx faced from such an order, or the

amount of overall irreparable harm that would be generated.  Beyond damages from future

infringement, further supply would reopen CoreRx to damages from its past infringement by

operation of the Settlement Agreement" is again completely contrary to facts of record, including

(1) that CoreRx submitted an expert declaration purporting to calculate its exposure "from

Bionpharma's launch in August 2021" thus including damages from past infringement (D.I. 36 ¶

43); and (2) that the Delaware court expressly held that Azurity would not be irreparably harmed.

To the extent that Azurity is arguing that CoreRx's failure to put the entirety of the

CoreRx-Azurity settlement agreement into evidence, first, the substance of the agreement was

discussed at length regardless, second, it was not a basis of this Court's decision to grant the

injunction, and third, it is now moot (D.I. 88, Stipulation and Order).

Even disregarding CoreRx's obligations to cooperate with Azurity in the defense of this

case, Azurity cannot point to a single instance where its interests were not adequately

represented that is not flatly contrary to facts of record.  This factor weighs strongly against

intervention.

## C.    Permissive intervention should be denied

"The principal guide in deciding whether to grant permissive intervention is 'whether the

intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"

*U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994), *quoting* Fed.R.Civ.P. 24(b)(2).

"Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial

words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely,

intervention must be denied."  *Nat'l Ass'n for Advancement of Colored People v. New York*, 413

U.S. 345, 365 (1973).  For the reasons described above with respect to intervention by right,

18

Azurity's motion is untimely, not least because Azurity strategically delayed its filing, and intervention now would prejudice at least Bionpharma.

Rule 24(b) permits intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). There is no such overlap here. Azurity's claim, to the extent one can be ascertained despite its failure to attach a pleading, is for patent infringement. This is a breach of contract action, which shares no claim, defense, or overlapping facts with any potential claim brought by Azurity.

Finally, the same factors governing intervention by right also govern permissive intervention. *H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986). For the reasons set forth above, every single factor weighs heavily against intervention. The Court should deny permission for Azurity to intervene.

## II.   AZURITY'S REQUEST TO SUPPLEMENT THE RECORD SHOULD BE DENIED

Azurity has withdrawn its motion for reconsideration. D.I. 87 ("Azurity withdraws that aspect of its motion seeking reconsideration of the preliminary injunction").

Azurity now instead seeks an "order that the record on the preliminary injunction has been supplemented to include the material submitted with Azurity's Motion." *Id.* This too, should be denied. Azurity cites no authority governing its motion, no legal standards for this Court to consider, or any statute or rule that permits it to supplement the record of a motion that has already been decided or withdrawn. For that reason alone, it should be denied.

Second, the injunction proceedings are closed. The parties completed their respective briefing, the Court held a hearing on the motion, and ultimately issued a ruling and accompanying order.

Third, permitting Azurity's briefing to become part of the record post-decision prejudices Bionpharma by denying it an opportunity to respond.  Azurity does not get the last word to Bionpharma's motion, and its attempt to do so here should be rejected.

Fourth, Azurity's submission is improper as it does not comply with the local rules of this Court.  Azurity's submission was styled as a motion for reconsideration; Local Civil Rule 6.3 specifically states that "[n]o affidavits shall be filed by any party unless directed by the Court." L. Civ. R. 6.3.  Azurity's extremely belated attempt to convert its motion from a motion for reconsideration to a purported motion to supplement the record does not change its fundamental nature, nor the manner in which the affidavits accompanying its motion were submitted.  They should be disregarded in their entirety.

Fifth, Azurity's papers do no more than rehash arguments already made by CoreRx, and rejected by this Court.  These duplicative papers contribute nothing to the substance of this case.

Sixth, Azurity and CoreRx cooperated with respect to the conduct and defense of Bionpharma's motion for preliminary injunction, and Azurity either already contributed to the record or decided not to.  The CoreRx-Azurity settlement agreement contains an express agreement among those parties "to cooperate in the conduct, defense, and/or settlement of a Related Bion Action."  D.I. 54-1 § 6.1.  To the extent that Azurity wished to have a say in the injunction record, it had its opportunity to do so.

Finally, Azurity's request to appeal or participate in the appeal should be denied.  It is unclear in what capacity Azurity would appeal or would participate.  Furthermore, Azurity will presumably already have its say in the appeal as a result of CoreRx's requirement to cooperate with Azurity in the conduct of this litigation (D.I. 54-1 § 6.1), and Azurity's separate participation is not needed or helpful.

## **<u>CONCLUSION</u>**

Azurity's motion should be denied in its entirety.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Attorneys for Plaintiff,
Bionpharma, Inc.

DATED:  February 11, 2022                By:___*/s/ Charles A. Weiss*_____
 New York, New York                          CHARLES A. WEISS

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the accompanying Brief in Opposition to Third Party Azurity

Pharmaceuticals, Inc.'s Motion to Intervene contains 6,324 words, excluding the parts of the

document that are exempted. This certificate was prepared in reliance on the word-count function

of the word processing system (Microsoft Word) used to prepare the brief.


DATED:  February 11, 2022                          _/s/Charles A. Weiss_
New York, New York                                 CHARLES A. WEISS