# EXHIBIT 1

1

1           IN THE UNITED STATES DISTRICT COURT

2           IN AND FOR THE DISTRICT OF DELAWARE

3
                            )
4   AZURITY PHARMACEUTICALS, INC.,    )  CIVIL ACTION
      Plaintiff,            )
5                          )  NO. 20-753-LPS
      v                    )
6                          )
    ANNORA PHARMA PRIVATE LIMITED,    )
7                          )  NO. 21-196-LPS
      Defendant.           )
8                          )
                           )
9   BIONPHARMA INC.,              )
                           )
10    Intervenor.          )
                           )
11

12

13

14
                - - - -
15
                Wilmington, Delaware
16              Friday, January 28, 2022
                Telephonic Oral Argument
17
                - - - -
18

19
    BEFORE:  HONORABLE LEONARD P. STARK, Judge
20

21

22

23

24

25
                Michele L. Rolfe, RPR, CRR

2

1    APPEARANCES:

2

3

4            MORRIS NICHOLS ARSHT & TUNNELL, LLP
          BY: MEGAN E. DELLINGER, ESQ.
            and
5            WENDY DEVINE, ESQ.
             KRISTINA M. HANSON, ESQ.
6              Counsel for Azurity Pharmaceuticals, Inc.

7

8          BAYARD, P.A.
          BY: STEPHEN B. BRAUERMAN, ESQ.,

9

10         CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A.
          BY: TODD S. WERNER, ESQ.
             Counsel on behalf of Annora Pharma Private
11            Limited

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1   serially extend the expiration of the patent coverage.  That

2   is not the case here.  Here Azurity has one patent family

3   Epaned, all of the patents expire together.

4          Notably, Annora failed to cite a single case

5   that finds that the interest in having a low cost generic on

6   the market outweighs the well-establish interest in

7   protecting the incentives for our patent system.

8          As the Federal Circuit has repeatedly noted,

9   including in Sanofi vs. Apotex 470 F.3d 1368, "There is a

10   significant public interest in encouraging investment in

11   drug development and protecting the exclusionary rights

12   conveyed in valid pharmaceutical patents."

13          That public interest favors maintenance of the

14   status quo and entry of an injunction until a post trial

15   decision can be rendered here.  Accordingly, all the factors

16   weigh in favor of Azurity and a preliminary injunction

17   should be granted.

18          THE COURT:  All right.  Thank you.  A few

19   questions for you, Ms. Devine.

20          One of the general themes, and you've already

21   addressed it, but I want to make sure I fully understand

22   you.  One of the general themes of the defendant here seems

23   to be you all told me there would be horrible repercussions

24   for your client if I did not grant a preliminary injunction

25   to stop the launch of Bionpharma.  I did not grant such a

26

27

1    preliminary injunction and your client has survived and,

2    arguably, even thrived nonetheless.  I understand some of

3    the particular circumstances that happened with Bionpharma

4    and presumably those precise circumstances would not occur

5    again, but why shouldn't I conclude as a general matter your

6    client will find a way to survive and this is just, you

7    know, crying wolf a second time?

8            MS. DEVINE:  Thank you, Your Honor.  So there

9    are a couple of reasons why the harm was stemmed from

10   Bionpharma's launch.  One being that Bionpharma had not

11   qualified an additional supplier and lost its supplier, so

12   the ongoing harm when we were before Your Honor in November

13   ceased, to a certain extent, shortly thereafter because

14   CoreRx chose to stop supplying Bionpharma; so that was an

15   event that happened that did extend the harm.

16            Azurity did suffer irreparable harm as a result

17   of Bionpharma's activities.  And as Mr. Patel details, that

18   harm is ongoing and still impacting the company.  That it

19   was stemmed through factual developments post our

20   preliminary injunction is what affected things.

21            So I would doubt -- it's an unusual circumstance

22   of Bionpharma, I would doubt that we would have the same

23   situation with Annora that they would somehow lose their

24   supply.  But, you know -- so we doubt that we would be able

25   to stem it in that same way.

68

1    and convincing evidence that these claims are invalid.  I'm

2    not.

3          All I am holding is that there's at least

4    persuasive evidence of invalidity on the grounds that I have

5    identified.  And any language I may have used that seems

6    broader than that is unnecessary.  I do think that these may

7    well be very strong defenses, but I don't have to make a

8    conclusion on that, and I'm not making a conclusion on that.

9          Turning back, just briefly, to enablement.

10   There's always an opinion from the defendant's expert that

11   at least some number of inoperable embodiments are captured

12   in the broad claims of the '868 patent and that, for this

13   reason as well, undue experimentation would be necessary in

14   order for the person of skill in the art to understand the

15   full scope of what is actually enabled and claimed.

16          This is additional persuasive evidence that is

17   sufficient to support my finding that the plaintiff has not

18   met its burden to show a likelihood of success on the merits

19   with respect to the claims of the '868 patents on which the

20   motion is based.

21          So for all of those reasons, Azurity has failed

22   to demonstrate a likelihood of success on the merits.

23          Let me turn, more briefly, to irreparable harm.

24   In my view, Azurity has also failed to show irreparable

25   harm, if -- as I am doing, I'm denying its motion for

69

1    preliminary injunction.

2            Azurity identifies a number of types of harms

3    that might under other circumstances support a finding of

4    irreparable harm.  The parties here are direct competitors.

5    This is a small -- or Azurity is a small specialty drug

6    manufacturer.  And Epaned, the product at issue in this

7    litigation, is its flagship product and the defendant -- and

8    the product is likely going to be substituted for Epaned.

9            As of today, there's market exclusivity.  We

10   heard, you know, late-breaking information that perhaps that

11   will change, independent of my decision, as a result of the

12   New York litigation between Bionpharma and CoreRx, its

13   supplier.  But as of today, it is true that Epaned is the

14   only product in a ready-to-use liquid enalapril market.

15           The plaintiff has evidence that it will be

16   harmed from the introduction into the market of a lower

17   priced generic competitor.  Annora's generic is obviously

18   unauthorized and would, almost certainly, if introduced

19   exert a downward pressure on the price of Epaned.  And

20   Azurity has said that it intends to launch its own

21   authorized generic, which will also exert downward pressure.

22           I should be clear, Azurity has said if this

23   motion is denied and if Annora does in fact intend to

24   launch, then Azurity intends to launch its authorized

25   generic.  And even if ultimately further litigation were to

70

1   remove Annora's competitors product from the market, it

2   would be difficult, I recognize, for the Epaned market price

3   to go back to the higher price it's currently at.  And

4   that's true whether or not Azurity launches its authorized

5   generic, but certainly all the more true, that is all the

6   more difficult, if Azurity launches its authorized generic.

7          Azurity argues that it's going to have to scale

8   back its education efforts related to its products and lose

9   sales of its other products if it can't get its foot in the

10   door as easily with its Epaned product.  And also talks

11   of -- and there's evidence for all those things, I

12   recognize, loss of research and development opportunities,

13   the possibility of employee layoffs, potential harm to the

14   plaintiff's reputation and, perhaps, loss of access to

15   funding.

16          All these things there's support for in the

17   record, they all, I think, are harm, but the plaintiff has

18   failed to persuade me on this record that any of those,

19   individually or in combination, under the circumstances here

20   constitute harm that would be irreparable.

21          One reason for Azurity's failure is the evidence

22   with respect to what occurred in connection with

23   Bionpharma's launch of it generic version of Epaned.  The

24   record appears to show that Azurity was not irreparably

25   harmed by that launch and has fully recovered from it.  That

70

71

1    is despite me, as the presiding judge in the Bionpharma

2    case, having heard that essentially all the harms forecast

3    now in this case, with respect to the pending motion here,

4    would occur and would be irreparable were I to deny the

5    preliminary injunction to stop Bionpharma's launch.  I then

6    denied that motion, Bionpharma launched and here we are

7    months later, and I do not believe that Azurity has been

8    irreparably harmed.

9           Now, two things:  One, the record of all of that

10   is fair for me to consider, much of it is in the record in

11   this case.  But beyond that, no one has argued I can't

12   consider the Bionpharma situation.  And I could take

13   judicial notice of it as well.

14          But, second, I do want to emphasize, I recognize

15   the circumstances are quite different here than in

16   Bionpharma.  I presume that Annora does not have the same

17   supplier that Bionpharma did.  And I'm sure it's unlikely

18   that the parent or holder of some amount of equity of

19   Azurity is going to go out and acquire or acquire some

20   equity in whoever Annora retains as its supplier; and that

21   fact pattern is unlikely to be repeated here.

22          But the important point to me is I don't know

23   what will happen in the absence of granting the requested

24   preliminary injunction, but I have real world experience

25   with Azurity, real world experience with Azurity that it can

72

1   survive the launch of a generic, even when it told me that

2   it would be irreparably harmed.  At bottom, and most

3   pertinently, Azurity just simply has not demonstrated that

4   the harms it forecasts will befall it from a denial of its

5   motion today will occur and will be irreparable.

6           In reaching that conclusion, I would also add

7   that any alleged harms are likely quantifiable and

8   monetarily compensable.  This appears to have been true of

9   the impact on the market from Bionpharma's launch of its

10  unauthorized generic.

11          For example, Azurity's CEO and expert used data

12  repositories to show the impact the Bionpharma generic had

13  on Epaned's market share and price.  And I have no reason to

14  think that the same type of exercise cannot be undertaken

15  after Annora's launch, if it turns out that Annora

16  ultimately does not prevail on the merits and then is liable

17  for damages to Azurity; I believe we will be able to

18  calculate those damages with reasonable certainty.

19          The speculated loss of R&D opportunities,

20  reduced sales of other products, layoffs and the other harms

21  I listed before, in the context of this case I think Azurity

22  can be compensated for these harms with a money judgment,

23  probably a large money judgment.  And, again, these are the

24  same types of harms that were predicted to be both

25  unavoidable and irreparable were Bionpharma to launch, but

73

1    that turned out not to be a correct prediction.

2         I'll add if it -- I have no reason to doubt that

3    what I was told happened in the New York litigation this

4    morning by counsel.  It did in fact happen.  If all of that

5    means it's more likely that the status quo soon is going to

6    be that there is a Bionpharma generic drug in this

7    marketplace, that makes the plaintiff's failing to show

8    irreparable harm for my denial of today's motion all the

9    more glaring, but my decision is not based on that.

10        I imagine plaintiff is correct that there will

11   be more litigation in that case, the New York case.  And so

12   I think that my decision is fully warranted, even on the

13   assumption that Bionpharma won't be back in the market soon.

14   But if Bionpharma will in fact be on the market soon, then

15   it's even more difficult for the plaintiff to show

16   irreparable harm from the introduction of a second

17   unauthorized generic competitor than it would be to show for

18   just one.  And, so, that would only strengthen the basis of

19   my decision.

20        Bottom line is Azurity has not met its burden to

21   show that it will suffer irreparable harm in the absence of

22   granting extraordinary relief of a preliminary injunction.

23        I'm not addressing balance of harms or the

24   public interest, it's not necessary.  The plaintiff has

25   failed to met its burden on the first two required elements