# EXHIBIT 1

1

1            IN THE UNITED STATES DISTRICT COURT

2            IN AND FOR THE DISTRICT OF DELAWARE

3
                                )
4  AZURITY PHARMACEUTICALS, INC.,    )  CIVIL ACTION
     Plaintiff,                 )
5                               )  NO. 20-753-LPS
     v                          )
6                               )
   ANNORA PHARMA PRIVATE LIMITED,    )
7                               )  NO. 21-196-LPS
     Defendant.                 )
8                               )
                                )
9  BIONPHARMA INC.,                  )
                                )
10    Intervenor.               )
                                )
11

12

13

14
                 - - - -
15
                 Wilmington, Delaware
16               Friday, January 28, 2022
                 Telephonic Oral Argument
17
                 - - - -
18

19
   BEFORE:  HONORABLE LEONARD P. STARK, Judge
20

21

22

23

24

25
                 Michele L. Rolfe, RPR, CRR

2

```
1    APPEARANCES:

2

3
            MORRIS NICHOLS ARSHT & TUNNELL, LLP
4            BY: MEGAN E. DELLINGER, ESQ.
              and
5            WENDY DEVINE, ESQ.
             KRISTINA M. HANSON, ESQ.
6              Counsel for Azurity Pharmaceuticals, Inc.

7
            BAYARD, P.A.
8            BY: STEPHEN B. BRAUERMAN, ESQ.,

9
            CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A.
10           BY: TODD S. WERNER, ESQ.
              Counsel on behalf of Annora Pharma Private
11             Limited

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

28

1          Now, one of the things that came up at our

2   hearing with Your Honor in November was we told Your Honor

3   that Azurity would have to launch the authorized generic,

4   and that that would cause rippling irreparable harm.  And I

5   stand by that.

6          We did not have to launch the authorized generic

7   because of the factual developments that happened shortly

8   thereafter with Bionpharma.  Here, we are poised to launch

9   the authorized generic because we have notice that Annora

10   wishes to launch at risk.  And we won't have the sort of

11   logistical delays that we had in doing so with Bionpharma.

12   So that is a harm that was future at that time that remains

13   future now that would apply here.

14          THE COURT:  All right.  On this accusation that

15   your client is following a strategy to get later patents --

16   not later expiring, but later patents to cover your

17   competitors' specific formulations.  I understand from

18   Ms. Hanson you all don't think that's relevant to her

19   issues, but likely the step on the merits.

20          Are those contentions relevant to the equitable

21   issues of irreparable harm and balance of harms and public

22   interest?

23          MS. DEVINE:  No, Your Honor, they're not.

24          When Annora filed their ANDA, they were aware

25   that Azurity had some patents, that Azurity had multiple

55

1    the merits side of the equation.  We heard, I just heard

2    that any phosphate buffer is the same.  Their expert didn't

3    say that in his declaration, so I'm not sure what the

4    evidence is on that.  We haven't had a chance to address it.

5            And with respect to Dr. Buckton's statements,

6    and the suggestion that those are limited to the prior art

7    and don't take into account the teachings of the

8    specification, I'm not sure what teachings in the

9    specification need to be taken into account.  There are none

10    when it comes to any phosphate buffers, other than the

11    generic reference, which was the same type of reference in

12    the prior art already in the '747 patent.  That those

13    recipients could be used in an enalapril formulation.  So I

14    just -- I think it's irrelevant that it was focused on prior

15    art in view of the complete paucity of disclosure and

16    guidance set forth in the specification for the asserted

17    patents.

18            THE COURT:  Okay, thank you.

19            Thank you to all three of you for the argument.

20            I came into this argument, you know, well

21    prepared and hopeful that I could make a decision quickly.

22    And happily I find that I am able to make that decision and

23    I'm going to give you that decision in just a moment.

24            I do want to preface it by saying the reason I

25    came in with that hope and prepared an expectation of least

1   having that goal, and why I'm going forward is these are, I

2   think, somewhat exigent circumstances.

3          We have a defendant who is on the cusp of being

4   able lawfully to launch at risk and appears fully intending

5   to do so.

6          While we do have a trial date later this year, I

7   think about six months from now, there's, you know, always

8   some degree of uncertainty with trial dates, and I say

9   there's some uncertainty here in that regard.  And further,

10   even in the best of circumstances take typically some months

11   to get an opinion out, as counsel know, in this type of

12   circumstance.

13          So while I'm sure I could do a better job of

14   articulating my reasoning if I take some time to write an

15   opinion, I think under the circumstances I should do my best

16   to give you my decision now.

17          I also am confident that the outcome would not

18   change if I take that time; although probably the reasoning

19   -- at least the clarity of the reasoning would, but I'll do

20   my best today.

21          And further, I'm only going to address the bare

22   minimum of issues that I need to address in order to explain

23   the outcome here.

24          So with all that, the issue is the plaintiff

25   Azurity's motion for a preliminary injunction.  And for the

57

1    reasons I will endeavor to outline, I have decided to deny

2    that motion.  I'm denying the preliminary injunction.

3           As we all know, the motion relates to the two

4    patents that remain in this case, the '868 and the '476.

5    For purposes of the motion, Azurity focuses on a subset of

6    six asserted claims, claims 11 and 12 of the '868 patent and

7    claims 9, 10, 12 and 13 of the '476 patent.

8           I'm not going to address with any great

9    specificity any differences among the claims within each of

10   the patents because my analysis doesn't really turn on that.

11          As noted, and clear in the record, Annora does

12   have tentative approval and appears likely eligible for

13   final approval for its drug product in just a couple of

14   weeks and trial is currently set, as I indicated, for July

15   of this year.

16          The factors that Azurity must establish to

17   obtain the extraordinary relief of a preliminary injunction,

18   an injunction that would keep the defendant off the market,

19   even before the merits of the parties' dispute have been

20   fully assessed and that legal framework is well established

21   and not disputed before the parties.

22          I'll just put on the record, Azurity quotes for

23   the standard the Winter vs. NRDC decision of the Supreme

24   Court in 2008, 555 U.S., a quote on Page 20.  "A plaintiff

25   seeking a preliminary injunction must establish that he is

58

1    likely to succeed on the merits, that he is likely to suffer

2    irreparable harm in the absence of preliminary relief, that

3    the balance of equities chips in his favor and that an

4    injunction is in the public interest."

5           As I will explain, I find that Azurity has not

6    met its burden on either of the first factors, so I must

7    deny Azurity's motion.  I will not be addressing the third

8    and fourth factors.

9           Let me turn now to the first factor:  The

10   likelihood of success on the merits.  First, Azurity is

11   required to show, since this is a patent infringement

12   dispute, a likelihood of success in proving infringement of

13   one or more of the six claims on which the motion is based.

14   This is not disputed, for purposes of the motion, and so the

15   plaintiff has met its burden on that aspect of the

16   likelihood of success showing.

17           But the issue comes up with respect to validity.

18   To obtain a preliminary injunction, Azurity must show that

19   Annora is unlikely to prove that the patent claims are

20   invalid.  The patents are all presumed to be valid.  To

21   overcome that presumption of patent validity and defeat the

22   preliminary injunction motion, Annora must identify

23   persuasive evidence of invalidity.  And for that framework,

24   part of which I have quoted, I would cite to the Federal

25   Circuit decision of Purdue Pharma, LP vs. Boehringer

1   Ingelheim GmhB 237 F.3d, specifically at page 1365, again

2   Federal Circuit in 2001.

3          And I conclude that Annora has presented

4   persuasive evidence of invalidity with respect to each of

5   the claims on which the PI motion is based.  And that's

6   because of written description and lack of enablement.

7          Let me talk about written description first.

8   The written description requirement requires a patent

9   application to convey to a person of ordinary skill in the

10   art with reasonable clarity that the applicant was in

11   possession of the invention as of the filing date.  That

12   standard is well settled.  I'm citing now the NovaZymes vs.

13   Dupont Nutrition decision of the Federal Circuit in 2013,

14   723, F.3d at 1344.

15          The written description test requires an

16   objective inquiry into the four corners of the specification

17   from the perspective of a person of ordinary skill in the

18   art.  And we know the claimed invention need not be recited

19   in haec verba.  Those parts of the standard, I don't think

20   are new, but they are set out newly in the Novartis vs.

21   Accord decision 2022 Westlaw 1679 at star 4 from January 3rd

22   of this year from the Federal Circuit.

23          The written description requirement cannot,

24   however, be satisfied by data disclosed after the filing

25   date, for that I cite Ariad vs. Eli Lilly 598 F.3d at 1355,

60

1  56 through Federal Circuit 2010.

2         Additionally, in undertaking the written

3  description analysis, it is not proper to use hindsight;

4  that is, the Court cannot start with the claims and then

5  look back into the specification for individual elements.

6         The defendant cites the In re Ruschig decision

7  of the C.C.P.A. in 1967, 379 F.2d at 995 for that

8  proposition, and I think that that proposition does apply

9  here.

10        I think it's clear from the record that small

11  changes in this -- in embodiments in this art can make

12  material differences.  And so, I think that principle of law

13  is applicable here.

14        There is no requirement that a patent disclose

15  either examples or an actual reduction to practice.  We know

16  that from at least the Alcon vs. Barr decision 745 F.3d at

17  1190, Federal Circuit at 2019.  However, as is uncontested,

18  the absence of such material in the patent is a pertinent

19  consideration as to whether a person of ordinary skill in

20  the art would understand the patent applicant to have been

21  in possession of the invention as of the filing date.

22        In my view that principle applies here and helps

23  the defendant meet its burden on the written description

24  defense, especially with respect to the '476 patent.

25        Annora argues, generally, that Azurity employs a

61

1    strategy of seeking patents covering competitor formulations

2    not disclosed in specification, and that that is what it has

3    done with the patents at issue here.  It explained, for

4    example, that the claims -- the claims in the '476 patent

5    that are directed to using a citric and phosphate buffer

6    system were first submitted in May of 2020, just a month

7    after Annora disclosed its formulation to Azurity.

8            Annora also cites to events that occurred with

9    respect to Bionpharma.  And I would say there is some

10   evidence in the record to support Annora's allegations about

11   the timing with which Azurity seeks claims or has sought

12   claims in this family of patents.

13           And I've considered that evidence, but I have

14   not considered it for purposes of the invalidity argument.

15   Though the defendant contends that it's indicative, I

16   suppose, of a fact pattern that might lead one to think that

17   these patents are invalid, for instance for lack of written

18   description, I'm not -- I'm not persuaded by that argument.

19           I do think the issue goes more to the equitable

20   consideration the Court always has to have in mind when

21   confronted with a request for the extraordinary equitable

22   relief of a preliminary injunction.  But I have not

23   considered the evidence for purposes of invalidity.

24           So let me turn to what I have considered on

25   invalidity.  I'll start on the '476 patent.  And I'm still

1   talking about the written description defense.

2          The '476 patent claims that buffer comprising

3   two specific agents, citric acid and disodium

4   hydrogenphosphate.  Yet the specification only contains a

5   single isolated reference to disodium hydrogenphosphate in

6   an exemplary, nonlimiting list of nearly 40 buffer agents.

7   That reference is in column 13.

8          I understand the argument that we heard at least

9   today that there's really a second reference to disodium

10  hydrogenphosphate elsewhere in column 13.  Even if I credit

11  that, we have at best two isolated references and the

12  combination, importantly, is not disclosed; not disclosed as

13  preferred, not something that a person of skill in the art

14  would understand to have been disclosed or possessed by the

15  applicant at the time of the invention.

16         And even on the very limited record I have on

17  this point, the Wikipedia reference, for example, it seems

18  that a person with skill in the art would understand the

19  purported second reference that plaintiff now identifies,

20  for instance, on their slide five in column 13, is broad

21  enough that it would encompass other phosphates as well.

22         Annora says, and I agree, at best these are

23  faint blade marks in the specification to try to guide a

24  person of skill in the art through the forest through the

25  claimed invention.  That's at best from plaintiff's

63

1   prospective.

2           The specification never discloses the use of

3   disodium hydrogenphosphate with a second buffer agent; and,

4   most importantly, does not disclose its use with or in a

5   combination with citric acid.  Instead, the specification

6   focuses on a different buffer combination, citric acid and

7   sodium citrate.  Given the differences between citrate and

8   phosphate, swapping a citrate buffer for a phosphate buffer

9   could impact the performance of the buffers and formulation.

10          As Azurity itself told the FDA, and for that,

11   and that's throughout the record, but I'll cite in

12   particular D.I. 85 at 6 to 7, which cites D.I. 86-35 at

13   5853.

14          The specification, however, provides no guidance

15   on these differences.  So in the Court's view, a person of

16   skill in the art would not have understood the inventors to

17   have been in possession of the claimed buffer system.

18          Azurity replies that Annora's expert, Dr. Dash,

19   admitted that the claimed buffer system is described in the

20   specification.  But when you look at his citation or the

21   citations to his declaration, what you see is just his

22   explanation that the specification refers to disodium

23   hydrogenphosphate just once in the exemplary, nonlimiting

24   list of nearly 40 buffer agents.  That's not very persuasive

25   evidence for the plaintiff.

64

1          Azurity also points to Dr. Dash's statement that

2    the claimed buffer system is commonly known in the art and

3    even has a colloquial name the "nickel vein" buffer.  And

4    the specification discloses a preferred embodiment with a

5    sodium phosphate buffer, which Azurity alleges a POSA would

6    understand to include disodium hydrogenphosphate.

7          So it's not -- I'm not suggesting there's

8    nothing on the plaintiff's side of the ledger here, but

9    there's not enough for them to prevail on this motion.

10          For reasons, in addition to all the ones I have

11    already said, Annora points out that other aspects of the

12    formulations claimed in the '476 patent are not described in

13    the specification.  For example, the specification never

14    discloses the claimed citrate phosphate buffer at the claims

15    concentration of about 5 nM to about 20 nM.  But a person of

16    skill in the art would know that the concentrations of the

17    agent must be separately assessed.

18          I agree with Annora on this point that it's

19    really only through hindsight that a person of skill in the

20    art would be able to identify anything resembling this

21    combination.  The specification also does not disclose the

22    claimed combination of the citrate phosphate buffer with the

23    claimed sodium benzoate preservative as sucralose sweetener.

24    Instead, the specification discloses over 26,000 different

25    potential combinations of buffer agent preservative and

65

1   sweetener and provides no way for a person of skill in the

2   art to divine the claims combination of these elements.

3          While the claims require a stability for 12 to

4   24 months, the specification lacks evidence of such

5   stability for any single formulation covered by the

6   plaintiffs.

7          So for at least all of these reasons, I agree

8   with Annora that there is at least persuasive evidence that

9   the '476 patent is invalid for lack of adequate written

10   description.

11          I agree with Annora that considering the claims

12   recitation of a specific buffer comprising two specific

13   agents, the specification's general description a stable

14   oral liquid formulation of enalapril, along with disclosure

15   of a variety of buffers, preservatives and sweeteners

16   without any working examples of the claimed formulation is

17   insufficient evidence that the inventors possessed the

18   claimed formulation; or at least, at very minimum, there's

19   persuasive evidence that that's how a person who in skill of

20   the art looking at this patent would view it.

21          So, none of the claims on which the patent --

22   excuse me, none of the claims of the '476 patent that are

23   asserted as a basis for the preliminary injunction, with

24   respect to none of those has the plaintiff met its burden to

25   show a likelihood of success on the merits due to the

66

1    persuasive evidence, at minimum persuasive evidence of lack

2    of adequate written description.

3            Turning to the '868 patent.  I'm not addressing

4    written description, because I find their persuasive

5    evidence as to lack of enablement with respect to those

6    claims, that is the claim of the '868.  And let me turn to

7    that now.

8            Enablement requires that the specification teach

9    a person in the skill of the art how to make and use the

10   full scope of the claimed invention without undue

11   experimentation.  The Court should consider the breath of

12   the claims in relation to the amount of direction or

13   guidance presented and the presence or absence of working

14   example, among other things.  And that legal standard is not

15   a dispute.  I would cite, in particular, to the ALZA vs.

16   Andrix Pharmaceuticals decision of the Federal Circuit in

17   2010, 603 F.3d at page 90, of course In re Wands 858 F2.d at

18   737 as a decision from the Federal Circuit in 1988.

19           So focusing on the '868 patent, Annora argues

20   that the claims cover any imageable buffer and permit the pH

21   to be as low as zero and as high as 4.5.  Relying on the

22   specifications' nonlimiting examples of buffers -- and

23   assuming they can be used as a combination, as Azurity

24   asserts -- the patent contemplates at least 1400 buffer

25   systems.  Yet, the specification describes only a single

67

1   formulation using a single citric acid sodium citrate buffer

2   at a narrow range of concentration.

3          In response to all of this, Azurity says that

4   the specification through examples informs a person of skill

5   in the art of the appropriate narrower pH range, which, in

6   turn, informs the buffer selection; and, therefore, enables

7   the claims to achieve the claims stability.

8          Azurity further contends that a person of skill

9   in the art would be able to choose an appropriate buffer

10   from a desired pH based on their knowledge and teachings

11   from the specification.  It follows, in Azurity's view, that

12   undue experimentation is not necessary.

13          There's expert support in the record on both

14   sides of these issues.  Annora's Dr. Dash argues that the

15   claims bear little resemblance to the limited guidance in

16   the specification.  While Azurity's Dr. Buckton then states

17   that Example E in the specification provides real life data

18   disclosing stability of an embodiment of '868 patent claims.

19          Having reviewed the evidence, I find that Annora

20   has presented at least persuasive evidence that the '868

21   patent is invalid for lack of enablement.

22          I should point out with both the written

23   description discussion and now the enablement discussion, I

24   may have, in my haste to try to explain my ruling, said

25   things that might suggest that I'm already finding by clear

68

1   and convincing evidence that these claims are invalid.  I'm

2   not.

3           All I am holding is that there's at least

4   persuasive evidence of invalidity on the grounds that I have

5   identified.  And any language I may have used that seems

6   broader than that is unnecessary.  I do think that these may

7   well be very strong defenses, but I don't have to make a

8   conclusion on that, and I'm not making a conclusion on that.

9           Turning back, just briefly, to enablement.

10  There's always an opinion from the defendant's expert that

11  at least some number of inoperable embodiments are captured

12  in the broad claims of the '868 patent and that, for this

13  reason as well, undue experimentation would be necessary in

14  order for the person of skill in the art to understand the

15  full scope of what is actually enabled and claimed.

16          This is additional persuasive evidence that is

17  sufficient to support my finding that the plaintiff has not

18  met its burden to show a likelihood of success on the merits

19  with respect to the claims of the '868 patents on which the

20  motion is based.

21          So for all of those reasons, Azurity has failed

22  to demonstrate a likelihood of success on the merits.

23          Let me turn, more briefly, to irreparable harm.

24  In my view, Azurity has also failed to show irreparable

25  harm, if -- as I am doing, I'm denying its motion for

69

1    preliminary injunction.

2           Azurity identifies a number of types of harms

3    that might under other circumstances support a finding of

4    irreparable harm.  The parties here are direct competitors.

5    This is a small -- or Azurity is a small specialty drug

6    manufacturer.  And Epaned, the product at issue in this

7    litigation, is its flagship product and the defendant -- and

8    the product is likely going to be substituted for Epaned.

9           As of today, there's market exclusivity.  We

10   heard, you know, late-breaking information that perhaps that

11   will change, independent of my decision, as a result of the

12   New York litigation between Bionpharma and CoreRx, its

13   supplier.  But as of today, it is true that Epaned is the

14   only product in a ready-to-use liquid enalapril market.

15          The plaintiff has evidence that it will be

16   harmed from the introduction into the market of a lower

17   priced generic competitor.  Annora's generic is obviously

18   unauthorized and would, almost certainly, if introduced

19   exert a downward pressure on the price of Epaned.  And

20   Azurity has said that it intends to launch its own

21   authorized generic, which will also exert downward pressure.

22          I should be clear, Azurity has said if this

23   motion is denied and if Annora does in fact intend to

24   launch, then Azurity intends to launch its authorized

25   generic.  And even if ultimately further litigation were to

70

1    remove Annora's competitors product from the market, it

2    would be difficult, I recognize, for the Epaned market price

3    to go back to the higher price it's currently at.  And

4    that's true whether or not Azurity launches its authorized

5    generic, but certainly all the more true, that is all the

6    more difficult, if Azurity launches its authorized generic.

7          Azurity argues that it's going to have to scale

8    back its education efforts related to its products and lose

9    sales of its other products if it can't get its foot in the

10   door as easily with its Epaned product.  And also talks

11   of -- and there's evidence for all those things, I

12   recognize, loss of research and development opportunities,

13   the possibility of employee layoffs, potential harm to the

14   plaintiff's reputation and, perhaps, loss of access to

15   funding.

16          All these things there's support for in the

17   record, they all, I think, are harm, but the plaintiff has

18   failed to persuade me on this record that any of those,

19   individually or in combination, under the circumstances here

20   constitute harm that would be irreparable.

21          One reason for Azurity's failure is the evidence

22   with respect to what occurred in connection with

23   Bionpharma's launch of it generic version of Epaned.  The

24   record appears to show that Azurity was not irreparably

25   harmed by that launch and has fully recovered from it.  That

71

1    is despite me, as the presiding judge in the Bionpharma

2    case, having heard that essentially all the harms forecast

3    now in this case, with respect to the pending motion here,

4    would occur and would be irreparable were I to deny the

5    preliminary injunction to stop Bionpharma's launch.  I then

6    denied that motion, Bionpharma launched and here we are

7    months later, and I do not believe that Azurity has been

8    irreparably harmed.

9         Now, two things:  One, the record of all of that

10   is fair for me to consider, much of it is in the record in

11   this case.  But beyond that, no one has argued I can't

12   consider the Bionpharma situation.  And I could take

13   judicial notice of it as well.

14        But, second, I do want to emphasize, I recognize

15   the circumstances are quite different here than in

16   Bionpharma.  I presume that Annora does not have the same

17   supplier that Bionpharma did.  And I'm sure it's unlikely

18   that the parent or holder of some amount of equity of

19   Azurity is going to go out and acquire or acquire some

20   equity in whoever Annora retains as its supplier; and that

21   fact pattern is unlikely to be repeated here.

22        But the important point to me is I don't know

23   what will happen in the absence of granting the requested

24   preliminary injunction, but I have real world experience

25   with Azurity, real world experience with Azurity that it can

72

1    survive the launch of a generic, even when it told me that

2    it would be irreparably harmed.  At bottom, and most

3    pertinently, Azurity just simply has not demonstrated that

4    the harms it forecasts will befall it from a denial of its

5    motion today will occur and will be irreparable.

6           In reaching that conclusion, I would also add

7    that any alleged harms are likely quantifiable and

8    monetarily compensable.  This appears to have been true of

9    the impact on the market from Bionpharma's launch of its

10   unauthorized generic.

11          For example, Azurity's CEO and expert used data

12   repositories to show the impact the Bionpharma generic had

13   on Epaned's market share and price.  And I have no reason to

14   think that the same type of exercise cannot be undertaken

15   after Annora's launch, if it turns out that Annora

16   ultimately does not prevail on the merits and then is liable

17   for damages to Azurity; I believe we will be able to

18   calculate those damages with reasonable certainty.

19          The speculated loss of R&D opportunities,

20   reduced sales of other products, layoffs and the other harms

21   I listed before, in the context of this case I think Azurity

22   can be compensated for these harms with a money judgment,

23   probably a large money judgment.  And, again, these are the

24   same types of harms that were predicted to be both

25   unavoidable and irreparable were Bionpharma to launch, but

73

1    that turned out not to be a correct prediction.

2          I'll add if it -- I have no reason to doubt that

3    what I was told happened in the New York litigation this

4    morning by counsel.  It did in fact happen.  If all of that

5    means it's more likely that the status quo soon is going to

6    be that there is a Bionpharma generic drug in this

7    marketplace, that makes the plaintiff's failing to show

8    irreparable harm for my denial of today's motion all the

9    more glaring, but my decision is not based on that.

10          I imagine plaintiff is correct that there will

11    be more litigation in that case, the New York case.  And so

12    I think that my decision is fully warranted, even on the

13    assumption that Bionpharma won't be back in the market soon.

14    But if Bionpharma will in fact be on the market soon, then

15    it's even more difficult for the plaintiff to show

16    irreparable harm from the introduction of a second

17    unauthorized generic competitor than it would be to show for

18    just one.  And, so, that would only strengthen the basis of

19    my decision.

20          Bottom line is Azurity has not met its burden to

21    show that it will suffer irreparable harm in the absence of

22    granting extraordinary relief of a preliminary injunction.

23          I'm not addressing balance of harms or the

24    public interest, it's not necessary.  The plaintiff has

25    failed to met its burden on the first two required elements

74

1   of a preliminary injunction.

2          Also, I should just note, it's obvious from the

3   record, I did not address the obviousness defense.  Even if

4   the plaintiff is right that the defendant did not come up

5   with persuasive evidence of obviousness, that did not alter

6   the outcome here given my findings on the other defendants.

7          So, I've said a lot.  I don't want any more

8   argument, but you may well have questions.  And if so, I'll

9   try my best to answer them.

10          First, either Ms. Devine or Ms. Hanson?

11          MS. DEVINE:  Thank you, Your Honor.  This is

12   Wendy Devine for Azurity.

13          I am going to discuss this with my client and

14   there is a possibility that we're going to want to appeal

15   this order.  And that we will want to seek some sort of

16   temporary restraint to allow us to seek an emergent appeal.

17          If we do want that, how would Your Honor like us

18   to approach the Court to discuss that?

19          THE COURT:  Sure.  I appreciate all of that.

20          As I'm sure you understand, first you should

21   approach the defendant, and I did start that conversation

22   with Mr. Werner.  And I would be hopeful that they would be

23   receptive to any reasonable request you might have.

24          I don't think any of us want to burden the

25   Federal Circuit with an appeal that has to go any more